# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| HENRY PEYTON INGE, ET AL. | § | |
| | § | Civil Action No. 4:17-CV-705 |
| v. | § | (Judge Mazzant/Judge Nowak) |
| | § | |
| BANK OF AMERICA, N.A. | § | |

**MEMORANDUM ADOPTING REPORT AND**
**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On July 19, 2018, the report of the Magistrate Judge (Dkt. #42) was entered containing proposed findings of fact and recommendations that Defendant Bank of America, N.A.'s Motion for Summary Judgment (Dkt. #31) be granted. Having received the report of the Magistrate Judge, having considered Plaintiffs' Objections (Dkt. #43), Defendant's Response to Plaintiffs' Objection (Dkt. #44), and having conducted a de novo review, the Court is of the opinion that the Magistrate Judge's report (Dkt. #42) should be adopted.

**RELEVANT BACKGROUND**

The underlying facts of this case have been set forth previously; as such, the Court sets forth only those facts pertinent to Plaintiffs' Objections.

Plaintiff Henry Peyton Inge obtained a Texas home equity loan on December 1, 2006, to refinance the property located at 1149 Shady Oak Circle, Argyle, Texas 76226 (the "Property") (Dkts. #31-2, #31-3). Mr. Inge is the sole borrower listed on the Texas Home Equity Note in the amount of $233,700.00 (the "Note"); however, both Mr. and Mrs. Jana Inge are signatories to Texas Home Equity Security Instrument (the "Deed of Trust") (collectively with the Note, the

"Loan") (Dkts. #31-2, #31-3). Defendant is now in possession of the Note, endorsed in blank (Dkts. #31 at p. 4, #31-1, #31-4).

At closing, Plaintiffs allegedly executed various loan documents including: (1) Uniform Residential Loan Application; (2) Good Faith Estimate; (3) HUD-1 Settlement Statement; (4) HUD-1 Certification; (5) Federal Truth-in-Lending Disclosure Statements (collectively, the "Loan Origination Documents"); (6) Receipt of Document Copies (the "Receipt"); and (7) Texas Home Equity Affidavit ("Affidavit") (Dkt. #31-5). Plaintiffs now argue they never received these documents (Dkts. #24 at p. 2; #34 at pp. 2–6, #36 at pp. 3–4), and subsequent to execution, requested Defendant to provide them with copies, but such documents were never provided (Dkt. #8 at p. 3). Defendant counters that, at closing, Plaintiffs received copies of the aforementioned documents (Dkts. #31-1, #31-5, #31-6, #31-7)., pointing to the Receipt, which contains a statement that Plaintiffs "received a copy of all the documents [they] signed at closing in connection with the extension of credit on my homestead property under Section 50(a)(6), Title XVI of the Texas Constitution" (Dkts. #31 at p. 4, #31-7), and the Affidavit, which similarly provides that to the best of their knowledge and belief, all owners of the Property, after receiving a copy of all documents signed by them, signed a receipt acknowledging the delivery of such copies (Dkt. #31-6).

Plaintiffs later defaulted on the Loan (Dkts. #31-1, #31-8). In 2011, Plaintiffs were notified the Loan was in default, the amount needed to cure the default, and a date-certain by which to do so in order to avoid acceleration of the Loan (Dkts. #31-1, #31-9). On April 18, 2012, Defendant accelerated the Loan ("2012 Acceleration") (Dkts. #31-1, #31-10). Litigation over the Loan has been pending since 2012.

*First Lawsuit*

On September 24, 2012, Mr. Inge filed suit in the 362nd Judicial District Court of Denton County, Texas (the "First Lawsuit") (Dkt. #34-4 at p. 20); *Inge v. Bank of America, N.A., et al.*, No. 2012-50780-367. On April 22, 2014, Defendant filed a counterclaim in the First Lawsuit (Dkt. #34-7). On April 15, 2016, Defendant sent a notice of rescission of the 2012 Acceleration to both Plaintiffs at the Property address and also to Mr. Inge's foreclosure counsel (Dkts. #31-10, #31-11). On July 21, 2016, the parties jointly requested dismissal of the First Lawsuit, which on July 25, 2016, the state court granted. *Inge*, No. 2012-50780-367. Two days later, on July 27, 2016, Mr. Inge moved to reinstate the case; on August 12, 2016, the state court reinstated the case. On August 11, 2017, the state court granted Defendant's motion for summary judgment and entered a final judgment. Plaintiffs' continue to pursue their appellate remedies related to such final judgment.

*The Instant Suit*

On August 10, 2017, Mr. Inge filed the instant lawsuit in the 431st Judicial District Court of Denton County, Texas (Dkt. #1 at p. 1); *Inge v. Bank of America, N.A.*, No. 17-6520-431. On October 17, 2017, Defendant removed the case to the Eastern District of Texas. On January 16, 2018, Plaintiff filed their First Amended Complaint and added Jana Inge as Plaintiff (Dkt. #24). The First Amended Complaint asserts a single cause of action: a suit to quiet title, based on assertions that Plaintiffs failed to receive copies of signed documents at closing in December 2006 and/or that Defendant's rights under the Loan are now time-barred (Dkt. #24). Plaintiffs do not assert any claim for breach of contract.

On February 28, 2018, Defendant filed its Motion for Summary Judgment (Dkt. #31). On July 19, 2018, the Magistrate Judge entered a Report and Recommendation, recommending that the Court grant Defendant's Motion for Summary Judgment, and dismiss Plaintiffs' sole claim (Dkt. #42). On August 2, 2018, Plaintiffs filed their Objections to the Report and Recommendation of the Magistrate Judge (Dkt. #43). On August 16, 2018, Defendant filed its Response to Plaintiffs' Objection (Dkt. #44).

## OBJECTIONS TO REPORT AND RECOMMENDATION

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3).

The Report recommends that Defendant's Motion for Summary Judgment be granted and Plaintiffs' quiet title claim dismissed because: (1) Plaintiffs have not tendered the amount due and owing under the Loan; (2) there is no genuine issue of material fact that Defendant's right to foreclose is not time-barred; and (3) there is no genuine issue of material fact regarding whether Plaintiffs received the Loan Origination Documents. Plaintiffs' primary objections focus on Plaintiffs' failure to tender and Plaintiffs' receipt of the Loan Origination Documents. Plaintiffs do not object to the Magistrate Judge's conclusion regarding Plaintiffs' statute of limitations argument. Plaintiffs also object to the Magistrate Judge's characterization of certain documents and/or proceedings in the underlying state court matters.

*Alleged Mischaracterization*

Plaintiffs object that the Report and Recommendation "mischaracterize[s] either the document entitled 'Receipt of Document Copies,' or the Texas Home Equity Security Instrument" and also the purpose of Plaintiffs' suit (Dkt. #43 at p. 1). Specifically in regard to the Receipt and

Security Instrument, Plaintiff argues that "[t]he Receipt, whose authenticity is a question of fact, is not notarized, sworn, or otherwise declared to under the penalty of perjury," and "[t]he Texas Home Equity Security Instrument, while the Report appears to refer to it as an Affidavit, is not" because "[i]t is not made on the penalty of perjury, is not stamped by a notary, and bears none of the usual indices of an affidavit" (Dkt. #43 at p. 1). In the Report and Recommendation, the Magistrate Judge noted that Plaintiffs executed several loan documents, including a Receipt of Document Copies (the "Receipt") and a Texas Home Equity Affidavit (Dkt. #41 at p. 2). The Texas Home Equity Affidavit is notarized and explicitly states that Plaintiffs signed their names, thereby attesting to, under oath, the veracity of the statements contained in the Affidavit (Dkt. #31-6). The Report and Recommendation does not refer to the Deed of Trust (the Security Instrument) as an affidavit. With respect to the Receipt, although this document is not notarized and does not contain any phrasing that the assertions contained therein were made upon penalty of perjury, the Receipt is a signed acknowledgment bearing the signatures of both Plaintiffs (Dkt. #31-7). The Report and Recommendation does not make any suggestion that the Receipt is an affidavit and/or a notarized document.

Plaintiffs also object to the Report's characterization that the First Lawsuit was filed to avoid foreclosure (Dkt. # 43 at p. 1). In the Report and Recommendation's factual recitation, the Magistrate Judge, referring to the First Lawsuit, states "Mr. Inge sued in effort to avoid foreclosure; filing suit in the 362nd Judicial District Court of Denton County, Texas" (Dkt. #41 at p. 3). Such statement by the Magistrate Judge has no impact on the conclusions reached in the Report, the result remains the same—Plaintiffs fail to raise a genuine issue of material fact as to their sole quiet title claim. Accordingly, the Court finds the error, if any, harmless. Plaintiffs' objections as to any alleged mischaracterization by the Magistrate Judge are overruled.

*Tender Requirement*

Plaintiffs next argue that the Report erroneously concludes tender is required prior to foreclosure. Plaintiffs' arguments related to tender are largely reiterations of those arguments presented to the Magistrate Judge. Specifically, Plaintiffs assert that no requirement exists to tender pre-foreclosure and/or before determining Plaintiffs' challenge to whether the underlying lien is valid. Defendant counters that relevant case law requires a tender to prevent inequitable results and preclude Plaintiffs from obtaining a windfall, and further responds that "Plaintiffs again confuse the remedy of forfeiture as being available in a quiet title suit, and assert—incorrectly, that a subsequent alleged failure to cure—long after the closing date of the loan, gives rise to a claim for forfeiture" (Dkt. #44 at pp. 2–3).

As to this second point, in the Report and Recommendation, the Magistrate Judge found that:

> Plaintiffs' argument. . . ignores that should Plaintiffs prevail on their quiet title claim, their recovery is limited to 'a declaration that the disputed deed of trust is invalid.' Plaintiffs are mistaken in their contention that they are entitled to forfeiture of the principal and interest paid under the Loan pursuant to their quiet title claim; they have failed to plead appropriate causes of action for any such relief.
> ∗∗∗
> The evidence demonstrates (and Plaintiffs do not dispute) that Plaintiffs are not current on their Loan payments; they are in default. Plaintiffs have not tendered the amount due on the Loan. As a matter of law, therefore, Plaintiffs cannot establish the superiority of their title to the Property.

(Dkt. #42 at pp. 19–21). As the Texas Supreme Court explained in *Garofolo,* "[a] borrower may seek forfeiture through a *breach-of-contract* claim." 497 S.W.3d at 484 (emphasis added). By pursuing a quiet title claim, Plaintiffs are only entitled to "a declaration that the disputed deed of trust is invalid," and are not entitled to have their default excused through virtue of the forfeiture remedy available for breach of contract claims brought pursuant to Article XVI, § 50. *See Kyle v. Strasburger*, 522 S.W.3d 461, 465 (Tex. 2017). In addition, it is well-established under Texas law

that "[a] plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." *McLerran v. Flagstar Bank, FSB*, 4:12CV718, 2013 WL 2468733, at *4 (E.D. Tex. June 7, 2013) (quoting *Fricks v. Hancock,* 45 S.W.3d 322, 327 (Tex. App—Corpus Christi 2001, no pet.)). This requirement is applicable in the context of allegations of constitutional deficiencies in the creation of Texas Home Equity loans. *Vestal v. Fed. Nat'l Mortgage Ass'n*, CV H-16-3628, 2017 WL 4217165, at *3 (S.D. Tex. Sept. 20, 2017) ("Plaintiff's claim to superior title is not based on the strength of Plaintiff's title to the Property, but on the weakness of Defendants' title to the Property resulting from the alleged violations of the Texas Constitution. Therefore, Plaintiff's quiet title claim fails as a matter of law.") (citing *Ventura v. Wells Fargo Bank, N.A.*, 4:17-CV-075-A, 2017 WL 1194370, at *2–*3 (N.D. Tex. Mar. 30, 2017) (dismissing the plaintiff's quiet title claim that was based on alleged constitutional violations to the home equity loan because it rested on the weakness of the defendant's title rather than on the strength of the plaintiff's title)).

Further, as to Plaintiffs' objection that "[t]he Report erroneously concludes that tender is required, prior to foreclosure, before a claimant may assert a suit to quiet title," (Dkt. #43 at p. 2), Plaintiffs advance that the Magistrate Judge failed to identify any Texas state court cases imposing a tender requirement prior to foreclosure in a home equity case. Notably, Plaintiffs fail to provide any state law authority holding a movant is not required to tender prior to foreclosure and make no attempts to distinguish the multitude of cases cited by the Magistrate Judge supporting the tender analysis. This Court recently found tender of the amount due and owing under a Loan to be a requirement to bring a quiet title claim prior to a foreclosure sale. *Moore v. Ameriquest Mortg. Co.*, No. 4:16CV380 (E.C.F. No. 74 at 8) (Priest-Johnson, J.), *report and recommendation adopted by,* No. 4:16CV380, 2017 WL 603323, at *5 (E.D. Tex. Feb. 15, 2017) (Mazzant, J.) (pre-

foreclosure sale suit to quiet title required tender).[1] In *Moore*, Plaintiffs' quiet title claim was dismissed as a result of Plaintiffs' failure to tender the amount due and owing under the Texas Home Equity Adjustable Rate Note and Texas Home Equity Security Instrument. *Id*. at (E.C.F. Nos. 49-1; 49-4; 74 at 8). In the instant case, Plaintiffs seek to quiet title and have failed to tender the amount due and owing under the Loan. At this time, in keeping with *Moore*, the Court finds that Plaintiffs' failure to tender is fatal to their quiet title claim. Plaintiffs' objections as to tender are overruled. *See Moore*, 2017 WL 603323, at *5.

*Plaintiffs' Receipt of the Loan Origination Documents at Closing*

Lastly, Plaintiffs object that the Report and Recommendation incorrectly found that there is no genuine issue of material fact as to whether Plaintiffs received all requisite documents at the time of closing because "a reasonable juror would find "Plaintiff's [sic] sworn testimony is accurate – they did not receive a complete set of the documents they signed at closing" (Dkt. #43 at p. 5).

Plaintiffs first object to the Report and Recommendation's use of an "'Affidavit' attesting that they would sign a receipt after receiving a complete set of documents they signed at closing." Specifically, Plaintiffs argue that they cannot locate any such affidavit in the record, and further contend that Plaintiffs' testimony that they did not receive all the documents at closing is not contradicted by any such affidavit. The Court first confirms that Docket No. 31-6 is indeed a sworn document contained in the record, entitled "Texas Home Equity Affidavit and Agreement,"

---

[1] Other courts have found tender is a necessary requirement in quiet title actions prior to foreclosure. *Maldonado v. Wells Fargo Bank, N.A.,* No. CV H-16-3574, 2017 WL 4950063, at *3 (S.D. Tex. Nov. 1, 2017) (dismissing plaintiff's quiet title at summary judgment stage claim where plaintiff had failed to tender the amount due under the loan); *see also Jemison v. CitiMortgage, Inc., et al.,* No. H-13-2475, 2014 WL 2739351, at *18 (S.D. Tex. June 17, 2014); *Campo v. Bank of Am., N.A.*, No. CV H-15-1091, 2016 WL 1162199, at *5 (S.D. Tex. Mar. 24, 2016), *aff'd,* 678 F. App'x 227 (5th Cir. 2017), *reh'g denied* (Mar. 31, 2017). This is not an exhaustive list, but is merely illustrative of those courts who have previously considered this same issue and found tender to be a necessary requirement to a quiet title claim pre-foreclosure.

which is dated December 1, 2006, signed by both Parties, and notarized (Dkt. #31-6). Furthermore, the "Texas Home Equity Affidavit and Agreement" contains a paragraph that "[t]o the best of [their] knowledge and belief, all owners of the Property, after receiving a copy of all documents signed will sign a receipt acknowledging the delivery of such copies" (Dkt. #31-6 at p. 4). With respect to this document the Report and Recommendation found:

> Plaintiffs argue that the Affidavit, signed by Plaintiffs, in which they attested that they would sign the Receipt after receiving the pertinent documents; does not prove that they actually received the closing documents. Neither Plaintiff asserts that they did not sign the Affidavit, and only Mr. Inge argues that he did not sign the Receipt. The Court finds that the Affidavit demonstrates that Plaintiffs acknowledged (separate and apart from the Receipt itself) that in signing the Receipt, they would attest that they had received such documents at closing.

(Dkt. #42 at n. 4).

Against this backdrop, "Plaintiffs [next] object that the Report concludes that Plaintiffs' affidavits are self-serving and lack factual support" (Dkt. #43 at p. 6). Specifically, Plaintiffs point out that Defendant did not produce expert testimony establishing Plaintiffs' signatures on the Receipt are valid; Plaintiffs also object to the implication that they needed to provide any further evidentiary support beyond the affidavits' conclusion that they did not receive the requisite documents at closing and/or Mr. Inge's signature is not genuine. Plaintiffs expound "Mr. Inge does not know who signed it, when, or any of the other background as to how this purported Receipt materialized. Instead, Mr. Inge properly testified as to what was in his personal knowledge" (Dkt. #43 at p. 7).

Defendant counters that "[t]his is exactly the reason that [the Receipt] is signed at closing of home equity loans – so that years after closing, a borrower cannot come back after serious default on the loan and claim copies were not received at closing." Defendant also argues that "Plaintiffs' attempt to place the burden of proof on Defendant is misplaced. . . . Plaintiff[s] offered

nothing more than a contradictory statement that [Mr. Inge's] signature was not genuine—yet his spouse did not make such a claim as to signature validity and the document was signed at closing on the same day as all the other loan documents were signed" (Dkt. #44 at pp. 4–5).

The Magistrate Judge held that "Plaintiffs' self-serving statements, made long after-the-fact, are contradicted by numerous other documents in the record reflecting that Plaintiffs did in fact receive copies and further are unsupported by any facts other than Plaintiffs' own bare assertions" and specifically noted after review of the summary judgment evidence:

> Mrs. Inge does not dispute that she signed the Receipt (wherein she avers that she received the requisite closing documents). She merely now states she never received the closing documents. Nor does Mrs. Inge (or Mr. Inge for that matter) object to the multiple pieces of evidence proffered by Defendant reflecting that she did receive the documents. Various courts have held that a borrower's sworn statements at closing, i.e., the signed Receipt, are conclusive on issues of compliance with the Constitution's home equity provisions, regardless of later allegations that the statements were false.
>
> ***
>
> In similar fashion, Mr. Inge now alleges that he never signed the Receipt, but he has failed to establish any bases for contending his signature was allegedly forged and/or is not genuine. As Defendant points out, "Plaintiff cannot meet his burden on this 'genuineness' issue because he has failed to overcome the signature. He has not shown that the signature is not genuine other than by a self-serving affidavit. But that is not the threshold of proof to overcome that valid signature. Plaintiff doesn't point out why or how the signature is not genuine or not authentic— he merely makes a conclusory statement as to its validity."

(Dkt. #42 at pp. 29–31) (internal citations omitted). The Court initially notes that the Report and Recommendation never enumerated any requirement, for Plaintiffs or Defendant, to obtain a handwriting expert's testimony. Instead, the Report clearly states that Plaintiffs' unsupported, self-serving statements, again provided long after-the-fact, are insufficient to create a genuine issue of material in light of the other evidence contained in the record. To Plaintiffs' argument that Ms. Inge and Mr. Inge's affidavits are adequately supported, the Court concludes, as the Report and Recommendation held, that Mr. Inge's testimony that he did not sign the Receipt and

Ms. Inge's testimony that she did not receive the closing documents (despite her signature on the Receipt) are unsupported and do not create a genuine issue of material fact.

Furthermore, record evidence supports Defendant's contention that Plaintiffs did in fact receive all requisite documents at closing. Plaintiffs signed contemporaneous with closing the Loan, the Affidavit, swearing that all owners, upon receiving all documents at closing, would sign a receipt (Dkt. #31-6). Defendant tendered the Receipt bearing signatures from both Mr. Inge and Ms. Inge, which state Plaintiffs received all Loan Origination Documents at closing (Dkt. #31-7). As noted above, Ms. Inge's sworn testimony does not aver that she did not sign the Receipt (Dkt. #34-5).

The only evidence proffered to contradict Defendant's evidence (which supports Plaintiffs' receipt of the Loan Origination Documents) is Mr. Inge's unsupported statements that he did not sign the Receipt. Without any factual support independently establishing Mr. Inge did not sign the Receipt, Plaintiffs have failed to establish a genuine issue of material fact. *See Sierra v. Ocwen Loan Servicing, LLC*, CIV.A. H-10-4984, 2012 WL 527940, at *4–5 (S.D. Tex. Feb. 16, 2012) ("[p]laintiffs proffer affidavits stating that they received no copies of documents until the loan closing. However, these self-serving and after-the-fact affidavits are contradicted by numerous documents that they signed contemporaneously indicating that they did in fact receive copies of relevant documents during the loan process."). Plaintiffs' objection is overruled.

Plaintiffs' final objection avers that "the Report errored [sic] when it considered Ms. Garite's general testimony but chose to ignore her specific testimony." Plaintiffs expound upon this argument, averring that "Ms. Garite testified, repeatedly, that she did not remember this specific transaction. . . . she made mistakes on at least three (3) other projects with Mr. Inge. A reasonable juror could conclude that. . . she failed, as Plaintiffs allege, to provide them with a copy

of the documents" (Dkt. #43 at p. 7). Defendant counters that "as to the testimony of the closer, Plaintiffs' attempts to discredit her testimony by relying on alleged 'omissions' she made on a later transaction with Plaintiff that had no bearing on the origination of the loan in question whatsoever, is not relevant nor does it show that she failed to supply them with copies of the documents signed at closing" (Dkt. #44 at p. 5). Addressing Ms. Garite's, deposition testimony, the Report and Recommendation found that "Ms. Garite testified that based on her extensive experience of following the same procedure for preparing documents for numerous buyers at closing, she is confident that Plaintiffs received copies of their closing documents. The excerpt provided by Plaintiffs involves a separate property and transaction, unrelated to the instant Loan," and therefore, "does not undercut Garite's testimony related to the provision of closing documents at issue in this matter" (Dkt. #42 at p. 31). Indeed, the deposition excerpt provided by Plaintiffs indicates a singular instance involving a different property and a different transaction where Ms. Garite did not provide all required documentation out of twenty-eight (28) years of experience following the same closing procedures. The Court finds, as the Magistrate Judge found, that this deposition excerpt does not undermine Ms. Garite's testimony regarding the closing procedures she has followed, including providing all required documents to the borrowers. This objection is overruled.

## CONCLUSION

Having considered Plaintiffs' Objection (Dkt. #43), Defendant's Response (Dkt. #44) and having conducted a de novo review, the Court adopts the Magistrate Judge's report (Dkt. #42) as the findings and conclusions of the Court.

It is **ORDERED** that Defendant Bank of America, N.A.'s Motion for Summary Judgment (Dkt. #31) is **GRANTED**.

    **IT IS SO ORDERED**.

  **SIGNED this 24th day of September, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE